IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY COBINE, NANETTE DEAN, CHRISTINA RUBLE, LLOYD PARKER, GERRIANNE SCHULZE, SARAH HOOD, AARON KANGAS, LYNETTE VERA, AUBREY SHORT, MARIE ANNTONETTE KINDER, and JOHN TRAVIS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF EUREKA, EUREKA POLICE DEPARTMENT, and ANDREW MILLS, in his official capacity as Chief of Police,<br><br>Defendants. | No. C 16-02239 JSW<br><br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

Now before the Court is the motion filed by the City of Eureka, the Eureka Police Department and Andrew Mills, Chief of Police ("collectively "Eureka") to dismiss the first amended complaint for injunctive and declaratory relief pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court HEREBY DENIES and GRANTS IN PART the motion to dismiss.

The first amended complaint was filed by eleven homeless individuals in the City of Eureka, individually and now on behalf of all others similarly situated. Originally, the complaint was filed by plaintiffs Stacy Cobine, Nanette Dean, Christina Ruble, Lloyd Parker, Gerrianne Schulze,

Sarah Hood, Aaron Kangas, Lynette Vera, Aubrey Short, Marie Anntonette Kinder, and John Travis (collectively "Plaintiffs") in tandem with a motion for a temporary retraining order ("TRO") seeking to enjoin Eureka from removing the homeless individuals and their belongings from an encampment at the Palco Marsh on the Eureka Waterfront on May 2, 2016.

On the morning of May 2, 2016, after consideration of the parties' papers, relevant legal authority, and the record, and having had the benefit of oral argument, the Court granted in part and denied in part the motion for a TRO.

After the clearing of the Palco Marsh encampment, on May 17, 2016, Eureka moved to dismiss this action. Thereafter Plaintiffs filed a first amended complaint, thereby mooting the motion to dismiss. The amended complaint updates the factual predicate of this matter post-eviction and seeks to bring the action as a putative class action by and on behalf of homeless residents of the City of Eureka for violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. Section 1983 and Article I, Sections 1, 7, and 17 of the California Constitution. Plaintiffs allege four claims for relief: (1) violation of prohibition against cruel and unusual punishment under the Eighth Amendment and California Constitution Sections 7 and 17; (2) violation of substantive due process under the Fourteenth Amendment and California Constitution Article I, Section 7; (3) violation of the right to be secure from unreasonable seizures under the Fourth Amendment; and (4) violation of the right to privacy pursuant to the United States Constitution and the California Constitution Article I, Section 1.

**BACKGROUND**

Plaintiffs, a group of eleven homeless individuals, have sued Eureka for alleged violations of their constitutional and statutory rights. According to the allegations in their complaint, Plaintiffs contend that Eureka announced that on May 2, 2016, it was going to evict a sizable community of homeless people who were then living at an encampment at the Palco Marsh. (First Amended Complaint ("FAC") ¶ 2.) The Palco Marsh is located on City property near the Bayshore Mall in Eureka, California, and is a portion of land that had been occupied by a homeless population since 2002. (*Id.*)

2

On March 18, 2016, the City of Eureka established a deadline of May 2, 2016 for the removal of the homeless encampment then in violation of Eureka's anti-camping ordinance, codified at Eureka Municipal Code section 93.02. (*Id.* at ¶¶ 5, 191.) On March 22, 2016, the Eureka Police Department distributed flyers entitled "Notice to Vacate" to homeless individuals living at the Palco Marsh. (*Id.* at ¶ 192.) The Notice indicated that it was a violation of the Municipal Code to camp on public or private property within the City of Eureka and that all personal property had to be removed prior to May 2, 2016 or the City would remove the property. (*Id.*) The Notice further indicated that any property that was removed could be reclaimed by arrangement with the City within 90 days of its removal. (*Id.* at ¶ 193.) Lastly, the Notice indicated that any person who failed to comply with the provisions of the Notice and to vacate the area of all possessions would be prosecuted. (*Id.*)

The City of Eureka's anti-camping ordinance provides:

**§ 93.02   Camping Permitted Only in Specifically Designated Areas**

(A)   Except as provided herein, no person shall camp in any public of private space or public or private street, except in areas specifically designed for such use. ***CAMP*** shall mean residing in or using a public or private space for living accommodation purposes, such as sleeping activities, or making preparations to sleep (including the laying down of bedding for the purpose of sleeping), or storing personal belongings (including but not limited to clothing, sleeping bags, bedrolls, blankets, sheets, luggage, backpacks, kitchen utensils, cookware, and similar material), or making any fire or using any tents, regularly cooking meals, or living in a parked vehicle. These activities constitute camping when it reasonably appears, in light of all the circumstances, that a person is using a public space as a living accommodation regardless of his/her intent or the nature of any other activities in which he/she might also be engaging. ***PRIVATE*** shall mean affecting or belonging to private individuals, as distinct from the public generally. All police officers are hereby charged with the enforcement of the camping provisions of this chapter.

Eureka, Cal. Municipal Code § 93.02. Public space includes parks, beaches, public parking lots or public areas. Public streets are defined to include any public street or public sidewalk, including public benches. (*Id.*)

Penalties for violation of the anti-camping code are provided by Eureka Municipal Code section 10.99, which provides that "[i]t shall be unlawful for any person to violate any provision or fail to comply with any of the requirements of this code. . . . Any person violating any of such provisions or failing to comply with any of the mandatory requirements of this code shall be guilty

3

of a misdemeanor . . . [and] shall be punishable by a fine of not more than $1,000 or by imprisonment in the county jail for a period not exceeding six months, or by both such fine and imprisonment." Eureka, Cal. Municipal Code § 10.99.

The City of Eureka planned to evict the homeless occupants of the Palco Marsh in order to tear down several concrete structures located in the vicinity and to make way for a new segment of the Eureka Waterfront Trail. According to the parties' submissions, this eviction has been completed.

Plaintiffs allege that in July 2016, the Eureka City Council unanimously passed a municipal ordinance codifying the process the City had been following with regard to personal property stored in public areas. (FAC ¶ 209.) The ordinance, now codified at Eureka Municipal Code Section 130.14, provides that "'no Person shall Store Personal Property in Public Area,' and 'All Stored Personal Property in Public Area may be impounded by the City' pursuant to 24-hours written notice. Impounded personal property is to be stored by the City for ninety (90) Days, and if not claimed within that time period, may be discarded. The proposed ordinance further provided that 'bulky items' – except for tents, any item too large to fit in a closed 60-gallon bin – and those items deemed by Defendants to pose 'an immediate threat to the health or safety of the public' may be immediately removed without prior notice and summarily discarded." (*Id.*)

The Court shall address further specific details as necessary in the remainder of its order.

## ANALYSIS

**A.   Applicable Legal Standard for Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

4

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. \_\_, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). The Court may review matters that are in the public record, including pleadings, orders and other papers filed in court. *See id.*

**B.     Eighth Amendment Claim.**

Eureka moves to dismiss Plaintiffs' first claim for relief for violation of the prohibition against cruel and unusual punishment afforded by the Eighth Amendment and the California Constitution Article I, Section 7. Plaintiffs argue that criminalizing public camping in a city without adequate shelter space to accommodate the city's homeless population constitutes the criminalization of homelessness itself, in violation of the Eighth Amendment.

The Eighth Amendment prohibition against cruel and unusual punishment "imposes substantive limits on what can be made criminal and punished as such." *Ingraham v. Wright*, 430 U.S. 651, 667-68 (1977). The Supreme Court has interpreted the scope of those limitations to find that laws criminalizing an individual's status, rather than specific conduct, are unconstitutional. *See,*

5

*e.g., Robinson v. California*, 370 U.S. 660, 666-67 (1962). In *Robinson*, the Court struck down a state statute that made it a criminal offense to be addicted to narcotics on the ground that it made an addicted person "continuously guilty of [the] offense, whether or not he has ever used or possessed any narcotics within the State, and whether or not he has been guilty of any antisocial behavior there." *Id.* at 666. Such a statute, the *Robinson* Court declared, would be akin to a law making "it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease," and would "be universally thought to be an infliction of cruel and unusual punishment." *Id.*

A few years later, in *Powell v. Texas*, the Supreme Court addressed whether a statute criminalizing public intoxication would be impermissible under the Eighth Amendment. 392 U.S. 514 (1968). In a four-judge plurality upholding the conviction, the Court found that its prior precedent in *Robinson* prohibited the criminalization of status and noted that the statute in *Powell* concerned conduct – the act of being intoxicated in public, rather than the status of alcohol addiction. *Id.* at 534. The plurality found that plaintiff had not definitively demonstrated that he was incapable of avoiding public intoxication as a result of his alcohol addiction. *Id.* at 521-25. In a separate concurrence, Justice White upheld the plaintiff's conviction and focused not on the distinction between status and conduct, but rather on the voluntariness of the prohibited conduct. *See Powell*, 392 U.S. at 548-51 (White, J., concurring). Under Justice White's analysis, the statute would impermissibly criminalize conduct under the Eighth Amendment if sufficient evidence were presented to demonstrate the prohibited conduct was involuntary based on one's condition. *Id*. at 551. In his concurrence, Justice White noted that for the homeless, "[f]or all practical purposes the public streets may be home for these unfortunates, not because their disease compels them to be there, but because, drunk or sober, they have no place else to go and no place else to be when they are drinking." *Id.* Although he ultimately found that the plaintiff had not presented evidence demonstrating that he was incapable of avoiding public places while intoxicated, Justice White found that alcoholics who are homeless *could* show that "resisting drunkenness is impossible and that avoiding public spaces when intoxicated is also impossible," and for those individuals, the statute "is in effect a law which bans a single act for which they may not be convicted under the Eighth Amendment – the act of getting drunk." *Id.*

6

Without a clear majority holding in *Powell*, the Ninth Circuit in *Jones v. City of Los Angeles* held a Los Angeles ordinance that criminalized sitting, lying, or sleeping in a public way at any time of day was unconstitutional as applied to the homeless.  444 F.3d 1118, 1138 (9th Cir. 2006), *vacated by settlement*, 505 F.3d 1006 (9th Cir. 2007).[1]  Because the record in *Jones* affirmatively established that the number of homeless individuals vastly outnumbered the amount of shelter beds and low income housing available in Los Angeles, the court determined that the homeless had no choice but to be present on the neighborhood's public streets and sidewalks.  *Id.* at 1137.  Accordingly, the Ninth Circuit found that the Eighth Amendment prohibited the defendant from punishing involuntary sitting, lying, or sleeping in public at any time of day because such conduct is an unavoidable consequence of being human and homeless without any available shelter in the City of Los Angeles.  *Id.* at 1138.

Under the rubric adopted in *Jones*, the determination whether the ordinance in this matter violates the Eighth Amendment requires a two-part inquiry.  First, the Court must determine whether the homeless have no choice but to sleep in the City of Eureka's public spaces.  "This could be established either on the basis that there is insufficient shelter space or perhaps because, for at least a portion of the homeless population, the 'chronic homeless,' living in a shelter is not a viable option."  *Bell v. City of Boise*, 834 F. Supp. 2d 1103, 1108 (D. Idaho 2011), *reversed on other grounds*, 709 F.3d 890, 894-95 (9th Cir. 2013).[2]  Second, the Court must find that the enforcement of the ordinance "effectively penalizes the homeless simply for being present or engaging in innocent activity, such as sleeping, that does not warrant punishment under the Eighth Amendment and, in effect, criminalizes the status of being homeless."  *Id.*  In this matter, the factual record has not been developed and a determination on this inquiry would be premature.

In its motion to dismiss the complaint, Eureka argues that there have been other decisions which have determined that similar statutes addressing homeless conduct merely criminalize

---

[1]  Although the opinion has been vacated and cannot be cited for any precedential value, the Court finds its reasoning persuasive here.

[2]  The Ninth Circuit reversed the district court opinion as moot because enforcement of statute had been specifically prohibited by special order of the Boise Police Department where a person was on public property when there is no available overnight shelter.

7

behavior and not status. *See, e.g., Ashbauer v. City of Arcata*, No. CV 08-02840 MHP (NJV), 2010 WL 11211481, at *6 (N.D. Cal. 2010) (holding that "the Eighth Amendment does not extend protection to involuntary conduct, such as camping overnight on public grounds, attributable to Plaintiffs' homeless status."); *see also Tobe v. City of Santa Ana*, 9 Cal. 4th 1069, (1995) (holding that plaintiffs had not established that they lacked "alternatives to either the condition of being homeless or the conduct that led to homelessness and to the citations"). The Court finds persuasive those courts that have recognized a basis for an Eighth Amendment challenge to an ordinance proscribing conduct that may be involuntary. Should this Court find, through the development of the factual record that the evidence establishes that Eureka has available and adequate homeless shelter space, the camping ordinance would not be found to criminalize involuntary conduct as a result of homelessness. *See, e.g., Joel v. City of Orlando*, 232 F.3d 1353, 1362 (11th Cir. 2000) (affirming summary judgment where city produced unrefuted evidence that it provided available space the concluding that the camping ordinance therefore did not criminalize involuntary behavior). However, without a developed factual record and based solely on the representations made in the complaint which at this procedural posture must be taken as true, the Court finds that a determination on the viability of an Eighth Amendment challenge to Eureka's City ordinance is premature. Accordingly, the motion to dismiss the Eighth Amendment claim for relief is DENIED.

**C.     Substantive Due Process Claim.**

In their second claim for relief, Plaintiffs make an as-applied challenge based upon a violation of the Fourteenth Amendment to the United States Constitution and violation of the California Constitution Article 1, Section 7 for violation of substantive due process rights. Plaintiffs allege that Eureka violated their substantive due process rights by placing them in a known danger with deliberate indifference to their personal, physical safety. It is well established that the Constitution protects a citizen's liberty interest in her own bodily integrity. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977); *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989). It is also well established that "although the state's failure to protect an individual against private violence does not generally violate the guarantee of due process, it can where the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where the state action

8

creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (citations omitted). Under the danger-creation doctrine, courts consider the whether the danger was affirmatively created by the state action, and whether the state acted with deliberate indifference to a known or obvious danger. *See id.* at 1062-64.

When examining whether a state actor "affirmatively places an individual in danger, [a court does] not look solely to the agency of the individual, nor [should it rest its] opinion on what options may or may not have been available to the individual. Instead, [the court must] examine whether the [state actor] left the person in a situation that was more dangerous than the one in which they found him." *Id.* at 1061-62. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bryan County v. Brown*, 520 U.S. 397, 410 (1997).

In *Sanchez v. City of Fresno*, the district court found that homeless plaintiffs had stated a claim under the danger-creation doctrine where plaintiffs alleged that the city had timed the demolitions of plaintiffs' shelters and property during the onset of the winter months where they knew that the cold and freezing temperatures and weather conditions would threaten plaintiffs' continued survival. 914 F. Supp. 2d 1079, 1102 (E.D. Cal. 2012). Here, Plaintiffs allege that the City's forced eviction from the Palco Marsh encampment and prohibition on the homeless population from residing in their own tents and makeshift shelters in their own encampment on public land caused them to reside and sleep "on the street in unfamiliar areas, and without the support of the community, render[e]d them vulnerable to assault, theft, harassment, and worse." (FAC at ¶¶ 4, 212.)

However, considering the stringent standard for finding deliberate indifference, the Court finds here that the allegations do not confirm that the state action was the impetus that put Plaintiffs in an inherently dangerous situation. In the absence of particular allegations that the state action put the Plaintiffs in an inherently dangerous situation, the Court is bound to find that the generalized dangers of living on the street preexisted Plaintiffs' relocation from the Palco Marsh. From the allegations in the amended complaint, it appears that the encampment residents were

9

permitted to sleep in a City-owned parking lot or were offered temporary emergency shelter accommodations. (*See id.* at ¶¶ 202, 203.) The current circumstances are certainly not ideal, but the Court finds they do not amount to a deliberate indifference of placing Plaintiffs in an inherently more dangerous situation than they had faced previously. The general circumstances of being homeless in Humboldt County cannot be minimized. Without allegations of intentional eviction during precarious weather or other facts indicating deliberate indifference to the safety and welfare of the population, the Court must dismiss the claim. *See Sanchez*, 914 F. Supp. 2d at 1102. The specific allegations here of state action regarding finding temporary shelter alternatives or moving a substantial portion of the population to a parking lot from public land does not rise to the level required by the stringent standard of deliberate indifference.

Accordingly, the Court GRANTS the motion to dismiss the second claim for relief for violation of substantive due process under the Fourteenth Amendment and the California Constitution, Article 1, Section 7. Because there are factual circumstances which might meet the burden of affirmatively placing an individual who is already facing the dangers of homelessness in a more precarious situation, the Court finds it would not be futile to allow amendment to the Plaintiffs' second claim for relief for substantive due process violation. The second claim for relief is dismissed with leave to amend.

**D.     Fourth Amendment Claim.**

Plaintiffs contend that, by adoption of a new City ordinance, Eureka's intended conduct will violate Plaintiffs' Fourth Amendment rights to be secure from government seizure and destruction of their personal property. The new ordinance, Eureka Municipal Code Section 130.14 ("Section 130.14"), entitled "Storage of Personal Property in Public Areas," states that the "unauthorized use of public areas for the storage of personal property interferes with the rights of other members of the public to use public areas for their intended purposes . . . . The purpose of this ordinance is to . . . prevent the misappropriation of public areas and parks for personal use, and to promote the health and safety by ensuring the public areas remain readily accessible for their intended uses." (FAC at ¶ 222.)

Section 130.14 provides that "'no Person shall Store Personal Property in Public Areas,' and 'All Stored Personal Property in Public Areas may be impounded by the City' pursuant to 24-hours written notice. Impounded personal property is to be stored by the City for ninety (90) days, and if not claimed within that time period, may be discarded. The ordinance further provides that 'bulky items' – except for tents, any item too large to fit in a closed 60-gallon bin – and those items deemed by Defendant to pose 'an immediate threat to the health or safety of the public' may be immediately removed without prior notice and summarily discarded." (*Id.* at ¶ 223.)

Plaintiffs contend that they have property rights in their personal possessions and belongings, even when they are stored in a public area. This property is not contraband or evidence of a crime, and therefore, they contend, Defendants' enforcement of the new municipal code "will result in the unreasonable seizure and destruction of their personal property in violation of their Fourth Amendment rights." (*Id.* at ¶ 224.)

### 1. Ripeness.

First, Defendants contend that an as-applied challenge is not yet ripe as no particular Plaintiff complains of a current enforcement of the new municipal ordinance. However, the Court finds the pre-enforcement challenge to the ordinance ripe where, as here, the government conduct poses a "real and immediate threat" to a plaintiff's constitutional rights. *See, e.g., Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342-43 (2014) (holding that a plaintiff "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."). Whether this Court views the question as one of standing or of ripeness, under Article III, a federal court only has jurisdiction to hear claims that present an actual "case or controversy." *Allen v. Wright*, 468 U.S. 737, 750 (1984). The issues presented must be "definite and concrete, not hypothetical or abstract." *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945). In order satisfy this prerequisite, a plaintiff must demonstrate that he has suffered an "injury-in-fact," *i.e.*, that he faces "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The direct injury requirement, however, does not have to be fully consummated in order to obtain preventative relief. *See, e.g., Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 143 (1974). Rather, it is sufficient for standing

11

purposes that "the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (quoting *Babbitt,* 442 U.S. at 298).

Here, the Court finds that Plaintiffs have sufficiently alleged that they plan to store their personal belongings on public property and that they face a credible threat that Defendants will try to enforce Section 130.14 against them. Accordingly, the Court finds the Fourth Amendment challenge to be justiciable.

### 2. Fourth Amendment Protections.

The Fourth Amendment protects Plaintiffs and other homeless individuals' retreats, regardless how ramshackle. "A man can still control a small part of his environment, his house; he can retreat thence from outsiders, secure in the knowledge that they cannot get at him without disobeying the Constitution. That is still a sizable chunk of liberty – worth protecting from encroachment. A sane, decent, civilized society must provide some such oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man's castle." *Silverman v. United States*, 365 U.S. 505, 511 n.4 (1961).

Although "our sane, decent, civilized society has failed to afford more of an oasis, shelter, or castle for the homeless . . . than their [tents], it is in keeping with the Fourth Amendment's 'very core' for the same society to recognize as reasonable homeless persons' expectation that their [tents] are not beyond the reach of the Fourth Amendment." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1028 n.6 (9th Cir. 2012) (citing *State v. Mooney*, 588 A.2d 145, 161 (Conn. 1991) ("The interior of [the homeless defendant's duffel bag and cardboard box] represented, in effect, the defendant's last shred of privacy from the prying eyes of outsiders, including the police. Our notions of custom and civility, and our code of values, would include some measure of respect for that shred of privacy, and would recognize its assertion as reasonable under the circumstances of this case.").) "The government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking." *Id.* at 1032 (citing *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir. 2008)). "This simple rule

holds regardless of whether the property in question is an Escalade or [a tent], a Cadillac or a cart." *Id.*

This Court finds that the homeless Plaintiffs' property is entitled to Fourth Amendment protection. In that context, the question before the Court is whether the municipal ordinance and the methods in which Defendants carry out the City's efforts to enforce its ordinance amount to a violation of that Fourth Amendment protection. Litigants in similar cases have succeeded in challenging a city ordinance where "they showed that the city failed to provide sufficient notice to the plaintiffs before seizing the property." *Acosta v. City of Salinas*, 2016 WL 1446781, at *5 (N.D. Cal. April 13, 2016); *see also Lavan*, 693 F.3d at 1032 (finding a substantial likelihood of success on the merits of a Fourth and Fourteenth Amendment claim where city admitted that it had a policy and practice of seizing and destroying homeless individuals' unabandoned possessions without any notice or an opportunity to be heard either before or after the seizure of their property).

Here, according to Plaintiffs' allegations and the text of the municipal code, the ordinance includes procedural safeguards to prevent the erroneous or unconstitutional deprivation of Plaintiffs' property. The ordinance gives 24-hour notice prior to the impounding of any personal property and requires that impounded personal property be stored by the City for ninety days prior to being discarded. (FAC at ¶ 223.) Accordingly, the Court finds that Plaintiffs fail to make out a claim for violation of the Fourth Amendment with regard to the provision in the City ordinance giving notice and storing personal property left in public areas.

However, with regard to the provision in the ordinance calling for the immediate destruction of bulky items or items deemed to pose an immediate threat to health and safety of the public, it is not clear what procedural safeguards are in place. There is no provision in the code as drafted explicating how a large item would be treated and whether its owner would get sufficient notice to find alternate storage elsewhere. There is no indication in the text of the ordinance or in the allegations made by Plaintiffs demonstrating what procedural safeguards would guide how Defendants would determine that any particular item poses an actual threat to the health or safety of the public or whether storage, rather than immediate destruction, may be feasible. However, the operative complaint contains no allegation that any particular Plaintiff currently owns either a bulky

13

item or an item that may be considered to pose an immediate threat to the health and safety of the public. On this basis, the as-applied challenge to the second portion of the new municipal code is not ripe for adjudication.

Accordingly, the Court GRANTS the motion to dismiss the third claim for relief for violation of the Fourth Amendment. Because there are factual circumstances which the Court could adjudicate an as-applied challenge to the immediate destruction provision of Section 130.14, the Court finds it would not be futile to allow amendment to Plaintiffs' third claim for relief. The third claim for relief is dismissed with leave to amend.

### E.     Violation of Privacy Claim.

Lastly, Plaintiffs allege a fourth claim for relief for violation of their right to privacy under the United States Bill of Rights and the California Constitution Article 1, Section 1. Plaintiffs allege that the enforcement of the City's anti-camping ordinance "has left Plaintiffs without any shelter or other place where they may exercise the right to privacy that they previously enjoyed in their tents, shelters and encampments." (FAC ¶ 230.) Further, Plaintiffs allege that "the restrictions and challenging conditions associated with [] emergency shelters preclude many Plaintiffs from accessing them." (*Id.* at ¶ 231.) Plaintiffs contend that "[e]xcept under very limited and extreme circumstances that are not present here, public entities in California are prohibited from conditioning the receipt of public benefits on the waiver of constitutional rights. Defendants violate this principle by conditioning the benefit of obtaining shelter and meals on Plaintiff giving up their constitutionally protected right to privacy." (*Id.* at ¶ 233.)

Plaintiffs contend that they should be able to state a claim for violation of their privacy rights because homeless individuals are afforded privacy rights in their shelters "from the prying eyes of outsiders. . . . Our notions of custom and civility, and our code of values, would include some measure of respect for that shred of privacy . . . ." (Opp. Br. at 14) (citing *Lavan*, 693 F.3d at 1028 n.6)). In order to assert a violation of the right to autonomy privacy under the California Constitution, a plaintiff must possess a legally protected privacy interest. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (citing *Hill v. NCAA*, 7 Cal. 4th 1, 35 (1994)). "These interests include 'conducting personal activities without observation, intrusion, or interference' as

14

determined by 'established social norms.'" *Id.* (citing *Hill,* 7 Cal. 4th at 36). Second, "the plaintiff's expectations of privacy must be reasonable. This element rests on an examination of 'customs, practices, and physical settings surrounding particular activities' as well as the opportunity to be notified in advance and consent to the intrusion." *Id.* (citing *Hill*, 7 Cal. 4th at 36-37). Lastly, the plaintiff must be able to show that "the intrusion is so serious in 'nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms." *Id.* (citing *Hill*, 7 Cal. 4th at 37). Further, no constitutional violation occurs "if the intrusion on privacy is justified by one or more compelling interests." *Id.* at 287-88 (citing *Hill*, 7 Cal. 4th at 38). The Court assesses the claim for violation of privacy "under the rubric of the common law and constitutional tests for establishing a privacy violation. . . . [the Court must] consider (1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests." *Id.* at 288.

Plaintiffs do not allege that the police or state agents investigated inside or intruded upon the contents of their tents. Rather, Plaintiffs allege their rights to privacy were violated by their removal from the group encampment and by the imperative to set up tents in other places in the City during night-time hours or to sleep in one of the shelters offered to them. Whether or not Plaintiffs maintained a reasonable expectation of privacy in the location of their tents, those expectations are weighed against the state's interests. In this matter, the policy of affording even temporary shelter or a place for the homeless population to set up sleeping arrangements away from public, environmentally protected areas, must be taken into account in the analysis.

Furthermore, with regard to the rules and requirements of the shelters afforded to Eureka's homeless population and collective living arrangements, Plaintiffs do not allege that these restrictions are enforced by Eureka. Unlike the conditioning of rights upon abdication of their privacy, Plaintiffs' alternative to staying at the Palco Marsh encampment are not conditioned upon the enforcement of the shelters' restrictions by the City of Eureka. *Cf. Robbins v. Superior Court*, 38 Cal. 3d 199, 207 (1986). Rather, according to the Plaintiffs' allegations, such restrictions are enforced by the private groups that offer temporary shelter. In order to state a claim under Section 1983 for violation of the Constitution, a plaintiff must allege two essential elements: (1) that a right

15

secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987). Generally, private parties do not act under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). The complaint, therefore, must allege facts tending to show that the private parties' conduct has caused a deprivation of federal rights that may be fairly attributable to the state actor. *Id.* at 708 (*quoting Jones v. Community Redevelopment Agency,* 733 F.2d 646, 649 (9th Cir. 1984) (holding that conclusionary allegations of action under color of state law, "unsupported by facts, [will be] rejected as insufficient to state a claim.")). A two-part test exists to determine whether private-party action causes a deprivation that occurs under color of state law. *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982). First, the deprivation must be caused by the exercise of some right or privilege created by the State; by a rule of conduct imposed by the state; or by a person for whom the State is responsible. *Id.* Second, the party charged with the deprivation must be a state actor. *Id.* A person may become a state actor by performing a public function or being regulated to the point that the conduct in question is practically compelled by the State. *Vincent v. Trend Western Technical Corp.,* 828 F.2d 563, 569 (9th Cir. 1987).

It does not appear from the allegations in the current complaint that a state action is responsible for the alleged privacy intrusions compelled by the specific restrictions and conditions enforced by the alternative shelters offered to Plaintiffs. It is furthermore unclear whether Plaintiffs have stated a viable claim for privacy rights in the location, as opposed to the contents, of their temporary abodes. The Court finds, as currently drafted, the allegations in support of Plaintiff's fourth claim for relief for violation of their privacy rights do not state a claim upon which relief can be granted under the California Constitution Article 1, Section 1 or the penumbra of rights afforded by the United States Constitution. Accordingly, the Court GRANTS The motion to dismiss the fourth claim for relief, with leave to amend.

## CONCLUSION

For the reasons set forth herein, the Court GRANTS IN PART and DENIES IN PART Eureka's motion to dismiss the first amended complaint. The Court provides Plaintiffs with leave

to amend. Plaintiffs shall file an amended complaint, if any, within twenty days of the date of this Order. If Plaintiffs file an amended complaint in accordance with this Order, Eureka shall file its response within twenty days of service of the amended complaint.

**IT IS SO ORDERED.**

Dated: April 25, 2017

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE